MARILYN JANCEY & others[1] vs. SCHOOL COMMITTEE OF
EVERETT.

Middlesex. April 6, 1998. - June 5, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Massachusetts Equal Pay Act. Statute,* Construction. *School and School Com-
mittee,* Compensation of personnel, Cafeteria worker, Custodian. *Words,*
"Comparable," "Like."

In an action brought under the Massachusetts equal pay act, G. L. c. 149,
§ 105A, by (female) school cafeteria workers seeking the same wage as
(male) school custodians, the judge's findings of fact regarding the actual
duties of each position supported the conclusion, from the viewpoint of an
objectively reasonable person, that the positions did not share "important
common characteristics," that is, they were so dissimilar that they were not
comparable for purposes of equal remuneration. [605-608] MARSHALL, J.,
dissenting, with whom ABRAMS & IRELAND, JJ., joined.

CIVIL ACTION commenced in the Superior Court Department on
June 9, 1989.

Following review by this court, 421 Mass. 482 (1995), the
case was heard by *Gordon L. Doerfer,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Ann M. Gilmore (Lee D. Goldstein* with her) for the plaintiffs.
*Juliane Balliro (Frank Mondano* with her) for the defendant.

GREANEY, J. In *Jancey* v. *School Comm. of Everett,* 421 Mass.
482 (1995) *(Jancey I),* we considered an appeal by the defendant
from a judgment entered in the Superior Court in favor of the
plaintiffs, cafeteria workers in the Everett public schools. The
judgment was based on a decision by the judge that the school
committee had violated the Massachusetts equal pay act, G. L.
c. 149, § 105A (MEPA), by paying the female cafeteria work-
ers a lower wage than the male custodians who worked in the
Everett public schools. In reaching this determination, the judge

---

[1]Ida Corriere and others similarly situated.

ruled that the test for determining whether the work of the cafeteria workers and the custodians was "of like or comparable character," the legal standard set forth in MEPA, was whether the work required comparable skill, effort, responsibility, and working conditions. *Id.* at 487. Because he determined that these aspects of the two positions were comparable, the judge concluded that the over-all character of the work was comparable within the meaning of the statute. *Id.*

We vacated the judgment and remanded the case to the Superior Court for additional proceedings. *Id.* at 501. We did so after we concluded that the judge's analysis was improper. *Id.* at 487. In so doing, we explained that the historical context in which MEPA was enacted provided "little support for applying the term 'comparable' to positions with dissimilar substantive content." *Id.* at 489. We concluded that the statute requires a two-part analysis, the first requiring the judge to "determine whether the substantive content of the jobs is comparable, that is, whether the duties of the jobs have 'important common characteristics.' " *Id.* "[T]wo positions that are so dissimilar in their substantive content that a reasonable person would regard them as categorically separate are not 'comparable.' " *Id.* at 489-490. It is only after "a determination is made that the jobs are comparable in substantive content, that the second inquiry is appropriate — whether the two positions entail comparable skill, effort, responsibility, and working conditions. If the answer to both inquiries is 'Yes,' then employees in the two positions must receive equal pay." *Id.* at 490.

On remand, the judge relied on the findings he made in his earlier decision to conclude that, under the first part of the two-part MEPA analysis, "[t]he substantive content of the two jobs are so dissimilar that a reasonable person would regard them as categorically different or separate." Thus, he ordered the entry of a judgment for the defendant. We granted the plaintiffs' application for direct appellate review and now affirm the judgment.

1. We summarize the judge's findings regarding the substantive job content of the cafeteria worker and custodian positions.[2] The cafeteria workers are responsible for providing school

---

[2]The plaintiffs contend that the judge erred in failing to make additional factual findings regarding the substantive job content of the two positions. On remand, both parties agreed that the trial record was complete with respect to the evidence on this issue, and no new evidence was presented. Although the

children with food that is nutritious, safe, and palatable, and for ensuring the cleanliness and sanitation of the food, workers, kitchen, serving areas, and cafeteria tables. The cafeteria worker position entails preparing, cooking, serving, selling, and accounting for individual food items procurable by school children and school employees for breakfast and lunch. Specific daily duties include transporting heavy cases of foodstuffs from the walk-in refrigerator to work stations; preparing and cooking food items; cleaning and sanitizing the cafeteria tables, serving areas, work tables, ovens, refrigerators, freezer, storage areas, sink, cooking equipment, and utensils; operating and checking temperature gauges and timers on the ovens; operating and checking steam gauges on the steamer and steam kettles; replenishing food supplies and rotating stock following deliveries; sweeping and cleaning the kitchen floor; and disposing of garbage.

The custodians are generally responsible for the security of the school buildings, for ensuring that the buildings are properly heated and ventilated, and for the over-all cleanliness and sanitation of the bathrooms, classrooms, corridors, stairways, and outside play areas. Their duties include opening and closing the schools; cleaning and maintaining the school grounds and walkways, including removing leaves and snow, and spreading sand or salt as needed; cleaning the classrooms, offices, and corridors, including removing trash, vacuuming and wet mopping floors, and cleaning and sanitizing bathrooms; repairing window screens and removing glass from broken windows; performing minor repairs on locks, doors, and furniture; receiving and storing supplies; maintaining and cleaning the heating and ventilation systems; and setting up tables and chairs in the gymnasiums or auditoriums as necessary.

2. In reviewing a nonjury case like this one, we accept the judge's findings of fact unless they are clearly erroneous (which they are not), but we independently review the legal standard

parties submitted proposed findings of fact in response to the judge's request, he acted properly in relying on the comprehensive findings he had previously made that were pertinent to this issue. The judge's decision conforms with our directions on remand, see *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 501 (1995) (*Jancey I*), and his findings meet the requirements imposed by Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). See *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 224 (1985); *Schrottman* v. *Barnicle*, 386 Mass. 627, 638-639 (1982).

which the judge applied to those facts. See *Kendall* v. *Selvaggio*, 413 Mass. 619, 620-621 (1992), and cases cited.

The plaintiffs contend that the judge erred in limiting the scope of MEPA to claims involving jobs which, as he said in one part of his decision, are "fungible,"[3] or where "[t]he subjective nature of the two jobs or the basic understanding of the objective or goal of each position [is] the same . . . ." In making these observations, the judge appears to have obscured the legal standard to be applied in assessing the comparability of the jobs. This mischaracterization, however, does not significantly advance the plaintiffs' case.[4] It is the duty of an appellate court to apply the correct legal standard to the facts settled by the trial court. When we perform that function here, we also conclude that the plaintiffs cannot prevail on their claim under MEPA.

As stated above, in applying the test announced in *Jancey I*, the first question we must address is "whether the substantive content of the jobs is comparable," which requires us to look to the facts regarding the particular duties of each job to determine whether the jobs share "important common characteristics." *Jancey I, supra* at 489. Contrary to the analysis applied by the judge, the test does not require that the jobs be fungible, a requirement that we view as more restrictive than that set forth in *Jancey I*.[5] Furthermore, that someone might subjectively consider the two jobs to be of the same nature, or that the jobs share the same general objective, are considerations irrelevant to a claim of comparability under MEPA. Instead, the first prong of the comparability test requires the court to evaluate the substantive content of the positions, specifically the actual duties of each position, from the viewpoint of an objectively reasonable person, to ascertain whether the jobs are so dissimilar that they are not comparable. Although the respective

[3]Black's Law Dictionary (6th ed. 1990), defines "fungibles," in part, as "[g]oods which are identical with others of the same nature, such as grain and oil. . . . With respect to goods or securities, those of which any unit is, by nature or usage of trade, the equivalent of any other like unit . . . e.g., a bushel of wheat or other grain; common shares of the same company."

[4]The judge's reference to "fungible" is an isolated part of his otherwise thorough and correct analysis under the first prong of the *Jancey I* test.

[5]The defendant contends that the judge uses the term "fungible" to "illustrate that the positions must share important common characteristics in order to be comparable." This may be so, although the judge's meaning is unclear from his decision.

duties of the positions may differ in some respects, comparable positions must share "important common characteristics."

The plaintiffs argue that the positions of cafeteria worker and custodian share "important common characteristics" within the meaning of the test because they share responsibility for the "domestic" work necessary to operate the schools and since they "involve the common characteristic of housekeeping." However, in assessing whether the positions are comparable, MEPA requires more than a commonality of responsibility and purpose. As we stated in *Jancey I*, the content of the specific jobs must be acknowledged when applying MEPA's "comparable" standard. *Id.* We decline to adopt the broad reading of the phrase "important common characteristics" urged by the plaintiffs, because to do so would effectively abrogate the first prong of the *Jancey I* test.[6]

The record reveals that only a limited number of the actual duties attendant to the cafeteria worker and custodian positions could be characterized as sharing "important common characteristics" in the sense suggested by the first prong of the *Jancey I* test, and those duties include the cleaning and sanitization of the various parts of the school facility for which each is responsible. Overall, however, the duties required of the cafeteria worker and custodian positions are so dissimilar that an objectively reasonable person simply would not conclude

[6]The plaintiffs rely on *McMillan* v. *Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288 (1st Cir. 1998), where the United States Court of Appeals for the First Circuit upheld a judgment for the plaintiff entered in the United States District Court for the District of Massachusetts in which she alleged that her job as department head of radiology at a veterinary hospital was equal to màle department heads of cardiology, medicine, surgery, and pathology, within the meaning of the Federal equal pay act, 29 U.S.C. § 206(d) (1988) (FEPA), despite differences in supervisory, budgetary, or administrative responsibilities. See *McMillan* v. *Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 880 F. Supp. 900, 903-904 (D. Mass. 1995) (decided prior to *Jancey I*). Although the plaintiff did not allege a violation of the Massachusetts equal pay act, G. L. c. 149, § 105A (MEPA), the First Circuit, relying on *Petsch-Schmid* v. *Boston Edison Co.*, 914 F. Supp. 697, 706-707 (D. Mass. 1996), and without citing *Jancey I*, noted, erroneously, that the standard under MEPA is the same as under FEPA. See *McMillan*, 140 F.3d at 298. Compare *Jancey I*, *supra* at 487-490. Accordingly, the First Circuit's decision in *McMillan* is of no assistance to the plaintiffs here. We are aware of one Federal decision in which a Federal court has cited the correct legal standard under MEPA. See *Mullenix* v. *Forsyth Dental Infirmary for Children*, 965 F. Supp. 120, 147-148 (D. Mass. 1996).

that the substantive content of the jobs is comparable. This case is not one, as suggested by the dissent, that simply involves "job labels" and "perceptions." There can be reasonable disagreement over which of the two jobs is the more onerous and whether cafeteria workers in Everett should be paid more than they are. It may very well be that the functions of the two classes of workers reflect traditional gender roles, and, as we recognized above, the positions may share common characteristics. These considerations, however, do not provide a basis to misapply the law in order to reach a praiseworthy but legally untenable goal. The analysis suggested by the dissent, if followed to its logical conclusion, would find comparability in many fundamentally disparate classes of jobs.[7] The judge made detailed findings of fact on what each job entails and their dissimilar substantive job content belies any conclusion that the jobs are comparable under the first part of the MEPA analysis.

*Judgment affirmed.*

MARSHALL, J. (dissenting, with whom Abrams and Ireland, JJ., join). Today, the court withdraws from the difficult challenge of analyzing comparable work and forsakes the quest for gender equity in workplace compensation.

*Jancey* v. *School Comm. of Everett,* 421 Mass. 482 (1995)

---

[7]The dissent contends that the analysis the court applies pursuant to *Jancey I* results in "comparable work" under MEPA being a more restrictive requirement than "equal work" under FEPA. It supports this contention by reference to our discussion of *McMillan* v. *Massachusetts Soc'y for the Prevention of Cruelty to Animals,* see note 6, *supra.* Our rejection of *McMillan's* applicability to this case hinges on the fact that the Court of Appeals for the First Circuit equated the MEPA and FEPA standards without considering *Jancey I.* The dissent's leap to the conclusion that the result endorsed here would make " 'comparable work' a more exclusive category than 'equal work,' " *post* at 609, is not warranted by our determination of *McMillan's* applicability to this case. We do not have the benefit of the Federal court's analysis of the positions at issue in *McMillan* under the *Jancey I* test, and thus it is speculative for the dissent to suggest, based on our discussion of *McMillan,* that *Jancey I* results in MEPA being more restrictive than FEPA.

Furthermore, by focusing on "a higher level of generality" to find comparability in jobs "shar[ing] important common characteristics, responsibilities, goals, and daily routines," the dissent ignores the first part of the *Jancey I* test and suggests an analysis devoted exclusively to the second part of the test. *Post* at 609.

(*Jancey I*), acknowledged that " 'comparable' is a more inclusive term than 'equal' . . . . [and] '[w]ork of "comparable character" is broader than "equal work." ' " *Id.* at 488, quoting *Bureau of Labor & Indus.* v. *Roseburg*, 75 Or. App. 306, 309 n.2 (1985). The narrow application of *Jancey I*'s two-prong test to determine comparable work, here endorsed by the court, has the ironic and contradictory effect of making "comparable work" a more exclusive category than "equal work" under the Federal equal pay act, 29 U.S.C. § 206(d) (1994) (FEPA).[1] I have no argument in theory with a test that measures "comparability" by focusing on job content and whether duties of jobs share "important common characteristics," while the second prong measures the "equality" of jobs. *Ante* at 604. The level of specificity or generality by which one defines job content and duties, however, makes all the difference. At one level of specificity, nontechnical school support staff perform categorically distinct jobs of dishwasher (cafeteria worker) and snow shoveler (custodian), cook (cafeteria worker) and trash remover (custodian). At a higher level of generality, work performed by all nontechnical school support staff is comparable work, because each position may share important common characteristics, responsibilities, goals, and daily routines. Within the categories of comparable work, individuals may vary in the equality of their jobs. In this case, the plaintiffs asked the judge and now ask us to look beyond job labels and the different perceptions of cafeteria workers and custodians that are, in part at least, artifacts of sexual stereotyping and traditional job segregation by gender.

The court does not undertake this more painstaking analysis. It rejects, on the one hand, the common characteristic of cafeteria workers and custodians suggested by the plaintiffs — "domestic" work, involving the "housekeeping" of schools — as too broad a level of generality. On the other hand, it eschews more detailed analysis of the judge's findings concerning the

---

[1]The court dismisses as irrelevant to our case law under the Massachusetts equal employment act, G. L. c. 149, § 105A (MEPA), the decision of the United States Court of Appeals for the First Circuit that the work of a department head of veterinary radiology was equal under FEPA to the work of the department heads of veterinary cardiology, surgery, medicine, and pathology, despite significant differences in supervisory, budgetary, and administrative responsibilities, not to mention technical duties. See *ante* at note 6, discussing *McMillan* v. *Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288 (1st Cir. 1998).

respective duties of each set of workers. Although the court recognizes that the job categories share a number of common duties — "cleaning and sanitization of the various parts of the school facility for which each is responsible" — the court does not question what percentage of each job category is spent on these common duties. The court also ignores findings that persons in each job category operate comparable equipment and appliances; monitor gauges and ensure safety; receive, carry, store, distribute, account for and manage necessary supplies; and interact with school children in nonpedagogical ways. Each kind of equipment or set of supplies, of course, at a specific level, may be distinct, but whether such differences make a difference, for purposes of equal pay for comparable work, is the critical inquiry. At the very least, such detailed analysis would identify and disaggregate both the common and the distinct duties of each job and establish grounds to measure equality of pay for that percentage of time and responsibility in which each job was comparable. Thus, if in fact fifty per cent of the time of both jobs involved comparable cleaning and sanitizing of facilities, wages should reflect equal pay for each job in that proportion to total pay for each job.

The court rightly criticizes the judge for limiting the scope of MEPA to jobs that are "fungible," and for using a standard whether "[t]he subjective nature of the two jobs or the basic understanding of the objective or goal of each position [is] the same . . . ." *Ante* at 606. The court's conclusory application of an "objective" standard, however — that "the duties required of the cafeteria worker and custodian positions are so dissimilar that an objectively reasonable person simply would not conclude that the substantive content of the jobs is comparable" — obfuscates the analysis, as much, if not more, than the standard used by the judge. *Ante* at 607-608. In the long run, an objective perspective on comparable work, shared by reasonable women and reasonable men, may develop. Before that consensus is reached, however, courts, assisted by the testimony of experts, must undertake detailed, functional analyses of jobs on a case-by-case basis, especially those jobs traditionally segregated by gender. Until such hard analytic work is done, invocation of a reasonable person's view of the comparability of jobs may do little more than mask biases.

Because the court fails to provide sufficient reasons for affirming the judge's conclusion that the jobs of cafeteria workers and custodians are not comparable, I respectfully dissent.