McIntyre, Frances A., J.
Defendants Barlow and John Babich (“Babich”) have brought this motion for summaiy judgment as to Counts II and IV of the complaint, which allege breach of fiduciary duty by fellow shareholders of a close corporation. For the following reasons, the defendants’ motion for sum- *685 maiy judgment as to Counts II and IV of the Second Amended Complaint is ALLOWED.
Plaintiffs David Elmaleh (“Ehmaleh”), John Pattillo, Gregory Shoukimas, Havacom, N.V., and IBS Turnaround Fund, LP filed this action against the defendants, alleging breach of fiduciary duty to the corporation and its shareholders, civil conspiracy, and malicious interference with an advantageous business relationship.[1] Plaintiffs and defendants are shareholders of Molecular Insight Pharmaceuticals, Inc. (Molecular). David Barlow (“Barlow”) is president of the Board of Directors of Molecular.
Barlow and Babich argue that Molecular Insight Pharmaceuticals, Inc. was not a close corporation, and therefore, the defendants did not owe the plaintiffs a heightened fiduciary duty of utmost good faith and loyalty.

THE COURTS RESOLUTION OF THE DISPUTED FACTS

The summary judgment record reveals there is no genuine dispute of facts material to Counts II and IV.
Plaintiffs failed to timely file a response to the Defendants’ Statement of Material Facts in their Opposition to this motion. Rather, plaintiffs filed abound volume of forty-six exhibits, including eight complete deposition transcripts, the corporate by-laws and subscription agreements, documents, and a plethora of electronic mail, notes, checks, etc. They also filed a substantial memorandum laying out their factual allegations, apparently in reliance upon, but without sourcing, specific exhibits. This is the type of filing which adherence to the rules is intended to prevent. (“In this process, the parties ought not to over-designate materials and thereby burden the court.”) Superior Court Rule 9A(b)(5).
At the hearing, the plaintiffs were afforded several days to file the Response required by Superior Court Rule 9A(b)(5), which they did. In their Supplemental Statement, fourteen of twenty factual assertions of the defendant were undisputed by plaintiffs.
The six areas in which the plaintiffs claim dispute are not considered by this Court to be genuinely so. The Supplemental Statement fails to include references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits to establish the plaintiffs’ claim there is a genuine issue to be tried, as required by the Rule. The assertion in the Supplemental Statement that certain facts are disputed to the extent they are “inconsistent with the language of the complaint” is insufficient to demonstrate to this Court that there is, indeed, a factual issue on these counts requiring a trial. “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.” Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting from Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).
The Defendants’ Statements of Facts numbered 15, 17 and 19 are opposed only with the bare assertion that they are “DISPUTED”; these paragraphs in the Statement cite the numbers of shareholders of record and the total of issued and outstanding common stock. Where these items of information are objective, numerical, and required to be recorded by corporations, I take the plaintiffs’ conclusoiy response as a desire to contest these issues, but without the facts with which to do so. If the plaintiff had opposing facts, they would be specified.
This Court determines from an examination of the plaintiffs Opposition pleadings, that there is no genuine dispute of the facts material to the defendants’ Motion for Summaiy Judgment as to Counts II and IV. I take the Defendants’ Statement of Material Facts to be an undisputed part of the factual record, including the complaint, upon which I will decide this motion.

THE UNDISPUTED FACTS

Molecular is a Massachusetts corporation with its principal place of business in Cambridge. Elmaleh started the corporation, and served on its Board of Directors until his resignation in 2002. John Pattillo is a private equity investor. Gregoiy Shoukimas and Elmaleh operate and invest in several medical services companies. Havacom, N.V. is a communications company located in Holland. IBS Turnaround Fund, LP is a Massachusetts limited partnership which operates as an investment fund.
The plaintiffs are and have been shareholders of Molecular since 1998. Plaintiff Elmaleh currently holds 3,453,480 shares. Defendants are also shareholders of Molecular. Babich has been a shareholder since 1997 and Barlow became a shareholder in early 2000. In their second amended verified complaint, the plaintiffs state that at the time of the acts complained of, the corporation had less than seventy shareholders and the corporation’s management collectively owned a majority of Molecular’s outstanding and issued stock.
Molecular has been a C-corporation since its incorporation in 1997. Beginning in 1998, in an attempt to attract investors to the corporation, Molecular’s Board of Directors (the “Board”) authorized several offerings of common stock to be issued from its treasuiy to various private investors who were qualified as accredited investors. On March 3, 1998, the Board unanimously authorized an offering of 370,000 shares of common stock to such accredited investors. On May 11, 1999, the Board unanimously authorized an offering of600,000 additional shares of stock to accredited investors.
On November 19, 1999, in an attempt to bring more capital into the corporation, the Board unanimously agreed to hire Boston Equity Advisors to act as a *686 placement agent to locate investors. In the written agreement, Boston Equity Advisors agreed to locate potential outside investors, including specialized investment funds, strategic investors, and non-traditional investors. On January 24, 2000, the Board unanimously authorized an offering of 255,000 additional shares of common stock to accredited investors.
In February of 2000, the Board authorized the merger of Molecular and one of its affiliates, Zebra Pharmaceuticals, Inc. (“Zebra”).
In August of 2000, the Board voted to authorize a sale of common stock to certain private investors and to create a separate class of preferred stock. The largest participant in this stock offering was defendant Barlow, who purchased approximately 38.36% of the issuance.
By the fall of 2001, the negotiations with venture capital firms had fallen apart. In September of 2001, the Board unanimously voted to sell some of the preferred stock to certain investors and amended the subscription agreements of the common stock investors from 2000. Again, the largest single subscriber in this preferred investor offering was Barlow, who subscribed for 58.50% of the stock issuance.
In July of 2002, plaintiff David Elmaleh resigned from the Board.
In November 2002, the Board (now comprised of six members: Barlow, James Buchanan, Babich, William Eckelman, Keith Greenfield and James Poitras) voted to authorize the corporation to enter into new agreements with the preferred stock investors and to issue additional shares of common stock to investors who had participated in the August 2000 common stock offering (the “repricing plan”). It is this repricing plan about which the plaintiffs complain bitterly, alleging it diluted the value of their stock and their percentage of ownership in the enterprise.

DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17(1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact. Pederson, 404 Mass, at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Counts II and IV of the plaintiffs’ complaint claim that Barlow and Babich as shareholders owed a fiduciary duty of utmost good faith and loyalty to the individual plaintiff-shareholders. Such a heightened duty between stockholders arises only in the context of a close corporation; see Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 593 (1975), which was limited to those organizations. Plaintiffs claim that such a duty was breached in that the “repricing plan" ultimately diluted the equity ownership of the plaintiffs and other minority shareholders. Under the repricing plan Barlow’s ownership interest in the corporation increased from 18% to 32%. Plaintiffs claim that the Board’s vote endorsing the repricing plan was due to the defendants’ manipulation of the Board.
The plaintiffs allege that if Barlow and the other defendants had actually purchased the shares of stock at the “contract” price at which they were obligated to buy the shares and not the reduced price under the repricing plan, then the plaintiffs’ equity would not have been “drastically reduced and Molecular would have received more than three and one half times the value for its stock.” Moreover, the plaintiffs argue that because Barlow “personally represented” many of the preferred investors who bought Molecular stock after the various offerings, as many of these investors were his business acquaintances, the repricing plan was motivated only by his own (and his friends’) potential to gain from it, not by any legitimate business purpose. The plaintiffs also state that the illegitimate purpose of the plan is evidenced by the Board’s failure to seek “outside advice as to the propriety of the repricing — no accountants, outside attorneys or investment bankers were consulted and no reports were brought before the Board for its review.”
In their Motion for Summary Judgment, the defendants contend that the corporation was not a close corporation at the time of the events which form the basis of the plaintiffs’ complaint, and thus, there was no heightened fiduciary duty and breach. Specifically, in their Memorandum, the defendants assert that Molecular “was not a close corporation because it (a) had more than 80 shareholders, (b) lacked substantial majority shareholder participation in its management, direction, and operations, (c) had been through several rounds of private outside financing, (d) had hired an outside placement agent, (e) had been involved in a merger, (i) had foreign and corporate investors, and (g) as of the first transaction complained of, had more *687 than one class of stock.” Additionally, the defendants contend that because minority shareholders owe the same fiduciary duty as majority shareholders of a close corporation, the breach of such a duty by minority shareholders only arises where, notwithstanding their minority status, such shareholders unfairly cause or prevent corporate events detrimental to other shareholders.
The plaintiffs contend that Barlow and Babich breached a fiduciary duty even if this Court does not find that Molecular was a close corporation. They state, however, that Molecular is a close corporation, and therefore, the defendants’ motion for summary judgment must be denied, as there is a genuine issue of material fact with regard to the issue of a breach of fiduciary duty.

A. Molecular’s Status as a Close Corporation

In Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 593 (1975), the Supreme Judicial Court recognized a fiduciary duty by a majority shareholder of “utmost good faith and loyalty” toward the shareholders of a close corporation. Accordingly, corporate fiduciaries, e.g. shareholders in a close corporation, are prohibited from engaging in self-dealing. See Geller v. Allied-Lyons, PLC, 42 Mass.App.Ct. 120, 122-23 (1997).
The Donahue Court “deem[ed] a close corporation to be typified by: (1) a small number of stockholders: (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation.” Donahue, 367 Mass, at 586. Because the Donahue Court expressly stated that the presence of these factors “typifies” a close corporation, the following analysis examines each of these factors with respect to Molecular’s corporate structure.
1. The First Donahue Factor: the Number of Stockholders
The first Donahue factor examines not only the actual number of shareholders, but the ownership of the corporate stock, defining a close corporation as “one in which the stock is held in a few hands or in a few families, and wherein it is not at all, or only rarely, dealt in by buying or selling.” Donahue, 367 Mass, at 585-86 (citations omitted). The requirement of a small number of shareholders is consistent with the oft-repeated comparison between close corporations and partnerships. See, e.g., Zimmerman v. Bogoff, 402 Mass. 650,657 (1988); Bessette v. Bessette, 385 Mass. 808-09 (1982); Donahue, 367 Mass. at 586.
The plaintiffs state in their complaint that at the time of the acts complained of, the corporation had less than seventy shareholders and the corporation’s management collectively owned a majority of Molecular’s outstanding and issued stock.[2] Although the plaintiffs are correct that Massachusetts law does not list a maximum number of shareholders in a close corporation, this court has not found a case in which a close corporation had more than twenty-one shareholders. Merola v. Exergen Corp., 38 Mass.App.Ct. 462,471-72 (1995), rev’d on other grounds, 423 Mass. 461 (1996) (close corporation had 21 shareholders). See also Dennis Seashores, Inc. v. Fitzpatrick, 2004 WL 1058944 *8 n.9 (Mass. Land Ct. Scheier, C.J.) (“Based on the discussion in Donahue, it is unlikely that thirty-three stockholders would be considered a close corporation”).
The Donahue court noted, with respect to the “few shareholders” requirement, that the stock in close corporations tends to remain in a “few hands.” Donahue, 367 Mass, at 585-86. The defendants note that many close corporations cited in Massachusetts case law are run by families or close acquaintances,[3] which explains why corporate ownership is generally “limited to the original parties or transferees of their stock to whom the other stockholders have agreed.” Id. at 587.
During the times relevant to this litigation, the Molecular stockholders were actively seeking additional investment and had hired an outside placement agent to attract new and diverse investors (including investment funds) to the company. To further their goal of finding new investors for the corporation, the Board unanimously voted for a stock repricing plan, authorized several common stock offerings, and created a separate class of preferred stock for accredited investors. Molecular had also gone through a merger with an affiliate in 2000.
The undisputed facts are such that no fact finder could find that the corporation has satisfied the first prong of the Donahue test, requiring a small group of closely-knit shareholders who intend to limit the ownership of the corporate stock and keep the corporation small.
2. The Second Donahue Factor: the Market for Stock
The second prong of the Donahue test examines whether there is a “ready market for the corporate stock.” Donahue, 367 Mass, at 586. The Donahue Court discussed “the opportunity for majority stockholders to oppress or disadvantage minority stockholders,” and how unlike “[i]n a large public corporation, [where] the oppressed or dissident minority stockholder could sell his stock in order to extricate some of his invested capital[,]” no such ready market exists for shares in a close corporation. Id. at 588,591.
Both parties concede that there was no ready market for shares of Molecular stock; it was not publicly traded. The corporation was actively seeking outside financing, and had hired several investment firms to try and recruit investors. As such, the second prong of the Donahue test has not been met, as there was no “ready market” for shares of Molecular stock. The defendants do not argue otherwise.
*688 3. The Third Donahue Factor: Management Participation by Stockholders
The third prong of the Donahue test examines whether there is “substantial majority stockholder participation in the management, direction and operations of the corporation.” Id. at 586. The defendants state that by November of 2002, the corporation had 95 shareholders, and the Board had 6 members (some of them key employees within the corporation), who held 16.1% of the common stock. The defendants note that even if these directors are found to have held all of the stock yet to be issued pursuant to the common stock offering of2000 and the preferred stock offering, the directors still held only 40.7% of the common stock. Although many of the directors who managed Molecular’s business affairs were also key employees within the company, there were many outside investors and investment funds with ownership in the corporation.
Was there substantial majority stockholder participation in the management, direction and operations of the corporation? It does not appear to this court to be so, certainly at the time of the November 6, 2002 vote on the repricing plan. Elmaleh, the original entrepreneur and owner of 32% of the stock, was no longer participating. Six directors, some of whom were officers (Barlow, Buchanan, Babich, Eckelman, Greenfield and Poitras) were managing and operating the business. Cumulatively, they owned a moderate percentage of the stock (16.1%). Together, Barlow and Babich owned just over 10%. However, there were ninety-five stockholders of record.
I start with the proposition that the Donahue court intended the third prong of this inquiry to be understood to look at whether “a substantial majority” of the “stockholders” participate “in the management, direction, and operation of the firm.” This issue goes to the degree of the stockholders’ hands-on involvement with their firm, not their position vis-a-vis their stock ownership.
Applying that construction to these facts, less than 10% of Molecular’s shareholders were involved in managing the organization at the operative times. This cannot be seen by any finder of fact as the “integration of ownership and managment” which typifies a close corporation. Id., at 585.
I do not take Donahue to call for an examination of the percentage of the stock owned by the management team, as the plaintiff suggests. They argue that I should look to the percentage of stock owned by the management team in making this determination. They argue that there is a factual dispute here because the finder of fact should include in the ownership calculation shares of stock to which certain members of the management group were entitled in the future, but which were not yet issued and outstanding.
I disagree with this proposition; the number of shares held by the managers must be objectively determined as it was a matter of record on the day of each vote questioned by the plaintiff. Furthermore, I find that argument to be irrelevant given my construction of the third Donahue prong.
Summary judgment should not be denied if no “fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (internal quotations omitted). Donaldson v. Farrakhan, 436 Mass. 94, 96 (2002), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (“mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff’). A trier of fact could not conclude, by a preponderance of the evidence, that there was substantial majority stockholder participation in Molecular’s management. The third prong of the Donahue test cannot be satisfied.
My conclusion is that consideration of a factual record about which there is no true dispute, that Molecular was not a close corporation as a matter of law. Consequently, Barlow and Babich as shareholders, as the plaintiffs have pleaded, did not owe a fiduciary duty of utmost good faith and loyalty to the individual plaintiffs. The plaintiffs cannot prove the allegations in Counts II and IV.

II. Breach of the Fiduciary Duty Owed by Stockholders to One Another

Defendant argues that if the plaintiff cannot establish a close corporation, then they owe no duty to their fellow shareholders. However, there are circumstances where stockholders, not in the close corporation context, have been held to owe a generalized fiduciary duty to one another. See Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525 (1996).
Consequently, I next consider whether these defendants , as shareholders both within and without a close corporation context, may be seen to have breached a fiduciary duty to their fellow shareholders.
Plaintiffs allege that defendants breached a fiduciary duty by engaging in self-dealing transactions. Specifically, they allege that Barlow, through his “domination and influence” over the Board, was able to pass the repricing plan through the Board’s vote. The repricing plan, the plaintiffs argue, allowed Barlow to reprice his shares without adequate consideration, a transaction which was to his benefit and to the detriment of the corporation.

1. The Defendants Met Their Duty of Loyalty, as the “Self-Dealing” Aspects of the Repricing Plan Were Fully Disclosed to the Board.

The plaintiffs allege that the repricing plans were proposed by Barlow and authorized by the Board only because of Barlow’s potential to profit from them. Assuming that this allegation falls within the penum *689 bra of “self-dealing,” I must examine whether this aspect of the transaction was disclosed to the minority shareholders. In a corporation, “to meet a fiduciary’s duly of loyalty, a director or officer who wishes to . . . engage in self-dealing must first disclose material details of the venture to the corporation, and then receive the assent of disinterested directors or shareholders, or otherwise prove that the decision is fair to the corporation.” Demoulas v. Demonios Super Markets, Inc., 424 Mass. 501, 532 (1992) (noting that the vote described is in addition to any vote required to authorize the transaction itself).
Barlow’s opportunity to gain from the repricing plan was patently obvious to the Board, because he had been the largest purchaser in the 2000 and 2001 common offerings. The plaintiffs are not heard to argue that the financial gains to Barlow presented by the repricing plans were not apparent when the idea was introduced, instead they decry the Board’s failure to seek “outside advice as to the propriety of the repricing — no accountants, outside attorneys or investment bankers were consulted and no reports were brought before the Board for its review.” Their arguments ignore their stated reasons for bringing the defendants — and particularly Barlow — into leadership positions within the corporation in the first place. Plaintiff Elmaleh stated that he stepped down from the chairman of the Board position and voted to give it to David Barlow because he had “industry-related business experience” and was “a veiy good investor.” (Aff. of David Elmaleh, Vol. I, p. 125.) Plaintiff Elmaleh started several biotech companies, and served as an officer to those companies. (Aff. of David Elmaleh, Vol. I, p. 41-47.) He also has a long history of investment experience. (Id. at 44-53.) His claims that he and other Board members were deceived into voting for the repricing plan because of Barlow’s “domination and influence” over the Board members are without merit.[4]

2. Even Assuming that Molecular Was a Close Corporation, the Defendants Can Establish a Legitimate Business Purpose for the Repricing Plan.

Where, as here, a plaintiff alleges that majority stockholders in a close corporation have breached a fiduciary duty, the Supreme Judicial Court held that the majority can raise a defense to a claim for breach of fiduciary duty by establishing a legitimate business purpose for its action. Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 850-51 (1976). The Court stated its concern that the “untempered application of the strict good faith standard enunciated in Donahue will result in the imposition of limitations on legitimate actions by the controlling group in a close corporation which will unduly hamper its effectiveness in managing the corporation in the best interests of all concerned.” Id.
The plaintiffs’ arguments concerning the legitimacy of the repricing plan cite to Molecular’s financial analyst’s statement that a price per share could be easily calculated, and thus repricing the shares pursuant to Babich and Barlow’s recommendations was unnecessary. The facts of this case can be closely analogized to those in Leader v. Hycor, Inc., 395 Mass. 215 (1985), in which minority shareholders[5] brought suit, alleging that the majority shareholders had acted fraudulently by misrepresenting the basis for effectuating a stock repricing plan. The Supreme Judicial Court held that the minority shareholders failed to carry their burden of establishing that less drastic alternatives were available to effectuate the majority’s legitimate business purpose. Id. at 223. The Court upheld the trial judge’s findings that the repricing plan had been advanced for legitimate corporate reasons, including “the somewhat disappointing market history of the stock,” the “very limited trading in the stock,” and because “dividends . . . have not represented a significant return on a $4.00 investment.” Id. at 217, 223. These same factors are, on the undisputed summary judgment record, identical to the reasons advanced for the Molecular stock repricing plan as well as the various stock offerings where Barlow increased his holdings. The corporation was seeking outside investment, negotiations with investment firms had fallen through, and Molecular relied upon Barlow’s experience and contacts in the industry to attract investment to the corporation.
By all accounts, the push to find other sources of outside financing, which resulted in several stock offerings and a repricing plan, was mandated by the need to keep the company from folding. No jury could find that this was not a legitimate business purpose. Moreover, although plaintiffs point out that the repricing plan benefitted Barlow, that statement ignores the other side of this coin: plaintiffs admit that Barlow was in fact one of the largest funders of Molecular’s capital, and as such, had much to lose if the corporation could not stay afloat. The defendants can establish a legitimate business purpose with respect to the repricing plan, and as such, there is no genuine issue of material fact related to the alleged breach of fiduciary duly, and the defendants are entitled to summary judgment on the plaintiffs’ claims for breach of fiduciary duty, whether or not Molecular is a close corporation.

CONCLUSION

The defendants have met their burden at the summary judgment stage, by showing that plaintiffs cannot establish that Molecular was a close corporation. They cannot be found to have owed a heightened fiduciary duty to the plaintiffs, or to have breached same. Nonetheless, the defendants have demonstrated that the stock repricing plan was advanced for a legitimate business purpose, and that any “self-dealing” aspects of the plan were fully apparent to the *690 Board which voted to approve it, so they have not violated a generalized fiduciaiy duty.

ORDER

Based on this conclusions, the defendants’ Motion for Summaiy Judgment as to Counts II and IV is allowed, and judgment is to enter for the defendants on those counts.

 Count One against Barlow alleges breach of fiduciaiy duty to the corporation, Count Two against Barlow alleges breach of fiduciaiy duty to the corporation’s shareholders, Count Three against Barlow and Buchanan alleges breach of fiduciary duty to the corporation, Count Four against Babich alleges breach of fiduciaiy duty to the corporation’s shareholders, Count Five alleges civil conspiracy/aiding and abetting, and Count Six alleges malicious interference with an advantageous business relationship.

The plaintiffs, urge this court to “equitably reduce by 17 as 18 of the shareholders of record are clients of Tanager Financial Services, Inc.” Even if this court were reduce to the number of shareholders by this amount, the number of shareholders is still higher than the upper limit determined to typify a close corporation. Further, the plaintiffs’ argument that Tanager acted as a “representative” to certain clients who were Molecular shareholders weighs heavily against a determination that Molecular was a close corporation, because the third prong of the Donahue test requires “substantial majority stockholder participation in the management, direction, and operations of the corporation.” Donahue v. Rodd Electrotype Co., 367 Mass. 578, 586 (1975).

See, e.g., Bessette v. Bessette, 385 Mass. 808-09 (1982) (close corporation with four shareholders, all of whom were family members).

In the context of a G.L.c. 93A claim, the Supreme Judicial Court recognized “that there may be ‘cases where an act might be unfair if practiced upon a commercial innocent yet would be common practice between two people engaged in business.’ In such circumstances, a claimant would have to show greater ‘rascality’ than would a less sophisticated party.” Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 475 (1991), quoting Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983). The same analysis can be applied to these facts. Due to the plaintiffs’ sophisticated knowledge of the biotech industry and business operations in general, they would be required to demonstrate this higher showing, and have failed to do so.

The court did not actually determine whether Hycor, Inc., a company which had been started by five shareholders, was a close corporation: “In ruling on the fairness of the price that the defendants offered to the plaintiffs in exchange for their shares of stock, the judge referred to ‘indicia used to determine the value of closely held stock.’ ” It appears, therefore, that he considered Hycor to be a close corporation. We need not decide this issue." Leader v. Hycor, Inc., 395 Mass. 215, 222 (1985).