GRAND MANOR CONDOMINIUM ASSOCIATION vs. LOWELL, 100 Mass. App. Ct. 765

 
 GRAND MANOR CONDOMINIUM ASSOCIATION & others [Note 1] vs. CITY OF LOWELL.

100 Mass. App. Ct. 765
 November 17, 2021 - March 17, 2022

Court Below: Superior Court, Middlesex County
Present: Kinder, Henry, & Hand, JJ.

 

Hazardous Materials. Massachusetts Oil and Hazardous Material Release Prevention Act. Real Property, Environmental damage. Evidence, Value, Expert opinion, Relevancy and materiality. Witness, Expert. Governmental Immunity. Municipal Corporations, Governmental immunity, Interest. Damages, Hazardous waste contamination, Interest, Attorney's fees. Judgment, Interest. Interest. Practice, Civil, Attorney's fees.

In a civil action involving environmental contamination discovered on property previously owned by the defendant city, the judge, in assessing damages to be awarded to the plaintiffs (a condominium association and individual unit owners), did not abuse his discretion in admitting in evidence an expert opinion of value based on other than comparable sales, where no such sales existed [769], or in admitting the testimony of a second expert and a model that he created, where the evidence sufficiently established that the process on which the testimony was based had general acceptance in the relevant community, and where the model was relevant as an aid to testimony [769-770].

Sovereign immunity did not bar an award of prejudgment interest against a city on a private claim for property damage under G. L. c. 21E, § 5 [770-772], calculated at the rate set forth in G. L. c. 231, § 6H, i.e., twelve percent per annum [772-773].

In the circumstances of complicated and lengthy litigation involving damages arising from environmental contamination, the judge's award of attorney's fees, expert fees, and costs under G. L. c. 21E, § 15, was not excessive. [773-774]

 Page 766 

CIVIL ACTION commenced in the Superior Court Department on October 10, 2012. 

 Following review by the Supreme Judicial Court, 478 Mass. 682 (2018), the case was tried before Joshua I. Wall, J., and motions for a new trial and to amend the judgment were considered by him. 

 Elliott J. Veloso, Assistant City Solicitor, for city of Lowell.

 Stacie A. Kosinski & Brian M. Hurley for the plaintiffs.

 KINDER, J. This case involves environmental contamination discovered on property previously used by the city of Lowell (city) as a landfill and subsequently sold to the developer of Grand Manor Condominiums. The plaintiffs are the condominium association and individual condominium owners, successors in interest to the developer. After a trial in 2016, a Superior Court jury found that the city was liable for response costs under § 4A of the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E (act). However, the jury rejected the plaintiffs' claim for property damage under § 5 (a) (iii) of the act, concluding that such recovery was barred by the applicable statute of limitations. On direct appellate review, the Supreme Judicial Court determined that the limitations issue should not have been presented to the jury and remanded the case to the Superior Court. See Grand Manor Condominium Ass'n v. Lowell, 478 Mass. 682, 684 (2018) (Grand Manor I). After a second trial, which is the subject of this appeal, a different jury awarded damages for both response costs and property damage. On appeal, the city claims that in the second trial (1) the plaintiffs' expert witness on damages should not have been permitted to testify; (2) the judge improperly allowed the jury to consider a three-dimensional model of the contaminated area; (3) sovereign immunity bars any award of prejudgment interest against the city; and (4) the judge abused his discretion in awarding attorney's fees and costs to the plaintiffs. For the reasons that follow, we affirm.

 Background. We summarize the relevant facts as set forth in Grand Manor I. In 2008, hazardous material from a landfill previously operated by the city was discovered in the soil underlying the Grand Manor Condominiums. Grand Manor I, 478 Mass. at 685-686. As a responsible party under the act, the city was required to undertake a remediation process, which, in this case, involved installing a cap over the hazardous material and implementing

 Page 767 

 an Activity and Use Limitation (AUL). [Note 2], [Note 3] Id. at 687-688. In 2012, the plaintiffs sued the city under § 4A of the act for response costs, and under § 5 (a) (iii) of the act for damage to their property (i.e., diminished property value). Grand Manor I, supra at 688.

 The second trial commenced in September 2018. The issues were limited to whether and by how much the plaintiffs' property values decreased because of the contamination and the AUL. The plaintiffs offered expert testimony from Robert LaPorte that property values diminished by $2,684,750 and were unlikely to return to their previous value given "the environmental conditions and . . . risk that will continue with this property for the foreseeable future." [Note 4] LaPorte reached his conclusion using "the sales comparison approach." First, LaPorte estimated the market value of an uncontaminated unit at Grand Manor by looking at sales of four nearby residential condominium units of about the same age and size. Next, to estimate the market value of a Grand Manor unit with permanent contamination and an AUL, LaPorte "researched and attempted to locate comparable situations where a condominium project may have been constructed on top of a landfill." Unable to find one, LaPorte instead aggregated and averaged sales of Grand Manor units since the contamination was discovered. LaPorte then subtracted that number from his estimated fair market value of a noncontaminated Grand Manor unit.

 The city cross-examined LaPorte regarding his failure to consider comparable condominium units built on a landfill before moving to strike LaPorte's testimony on that basis. The judge denied the motion, reasoning that LaPorte "was clear that there were no comparables to use" and there was no evidence before the jury that LaPorte failed to use proper appraisal methodology.

 Geographic information systems analyst Stephen Washburn

 Page 768 

 testified regarding a three-dimensional computer model of the premises that he created. The model showed the location and geographic extent of contaminated soil on the site and areas of proposed remediation. The city moved to exclude Washburn's model, arguing that it was (1) not scientifically reliable or timely disclosed, and (2) irrelevant and unfairly prejudicial because it did not depict levels of contamination. The judge denied that motion.

 Expert real estate appraiser Joel Tran testified for the city that the current market value of the units at Grand Manor had been reduced by $3,054,700 because of the contamination. Tran opined, however, that the market value would fully recover within two years of complete remediation. Tran also "employed the sales comparison approach" to reach his conclusions, and compared five previously contaminated properties that had been remediated and redeveloped. Tran compared the market value of units at these properties following the discovery of further contamination.

 The jury reached a different conclusion than either expert and awarded the plaintiffs damages of $1,419,550. [Note 5] Following the verdict, the plaintiffs submitted a proposed judgment that included prejudgment interest of twelve percent. The city responded with its own proposed judgment and a supporting memorandum arguing that prejudgment interest was barred by sovereign immunity. The judge adopted the city's argument before receiving the plaintiffs' response.

 The plaintiffs moved to amend the judgment to include prejudgment interest at a rate of twelve percent per annum since 2012, arguing that the act contains an implicit waiver of sovereign immunity. The plaintiffs also moved to amend the judgment to include costs and attorney's fees in the amount of $1,134,516.97, "consisting of $606,187.48 from the first trial, $72,637.50 for a successful appeal, $329,507.50 for the second trial and $126,184.49 in expert fees/costs and deposition/transcript costs over two trials." The judge reversed his earlier ruling with respect to prejudgment interest, concluding "that waiver of sovereign immunity for prejudgment interest is a 'necessary implication' of the terms of the statute, G. L. c. 21E, § 5." As to attorney's fees and costs, the judge agreed with the city that the plaintiffs should not be reimbursed for their appeal in Grand Manor I and denied

 Page 769 

 the request for those fees in the amount of $72,637.50. The judge found that the plaintiffs' remaining requests for fees and costs were adequately supported and were not excessive.

 Discussion. 1. Evidentiary rulings. a. Expert testimony. We see no abuse of discretion in the judge's denial of the city's motion to strike the testimony of the plaintiffs' expert because he did not use the comparable sales method of valuation. Trial judges have discretion to determine "what evidence should be admitted on the subject of valuation," as well as "whether special conditions exist so that methods other than comparable sales can be used in establishing value." Lic, Inc. v. Hudson, 10 Mass. App. Ct. 815, 816 (1980). Here, there was evidence that there were no comparable sales of residential condominium units originally constructed on contaminated land. Id. The units considered by the city's expert as comparable sales had already been "remediated to the point of no significant risk to public health." Grand Manor I, 478 Mass. at 685. Thus, this case is not like Young Men's Christian Ass'n of Quincy v. Sandwich Water Dist., 16 Mass. App. Ct. 666, 670-671 (1983), upon which the city relies, where the expert misapplied a method of valuation. The plaintiffs' expert did not misapply the comparable sales method; he simply chose not to include sales that were not comparable. The city's contention, that LaPorte's testimony was based on inadequate information, "goes to the weight and not the admissibility of the testimony." Commonwealth v. Rintala, 488 Mass. 421, 429 (2021).

 b. Three-dimensional model. Washburn's testimony and the three-dimensional model were admissible if they were reliable and relevant, see Commonwealth v. Hinds, 487 Mass. 212, 218 (2021); Mass. G. Evid. §§ 402, 702 (2021), and if their probative value was not "substantially outweighed" by the danger of prejudice, Mass. G. Evid. § 403 (2021). Decisions on those issues are matters within the judge's discretion. Carrel v. National Cord & Braid Corp., 447 Mass. 431, 446 (2006), and cases cited.

 We see no abuse of discretion here. Washburn testified that he created the model using software programs that "are widely used for visualization of topographic and subsurface features in both 2D and 3D," and are "accepted methodology in [his] field." There was no contrary evidence. Indeed, the city's own expert in environmental modeling was familiar with the use of computer software to create three-dimensional computer models, and had done so himself. Thus, the evidence sufficiently established that the process on which 

 Page 770 

Washburn's testimony was based had "general acceptance in the relevant community." Rintala, 488 Mass. at 428, quoting Commonwealth v. Patterson, 445 Mass. 626, 640 (2005), overruled on other grounds by Commonwealth v. Britt, 465 Mass. 87 (2013).

 Although the city's expert opined that Washburn's model was inaccurate, that opinion was not based on Washburn's methodology. We have carefully reviewed the model and agree with the judge that it was relevant as "an aid to testimony" and not overly prejudicial simply because it did not include contamination levels. The city's argument regarding the model's accuracy again went to its weight, not its admissibility. See Rintala, 488 Mass. at 429. Finally, we see no prejudice where five still photographs admitted without objection reflect the same basic information as the model.

 2. Prejudgment interest. a. Sovereign immunity. A city's liability for prejudgment interest "implicates the doctrine of sovereign immunity, which protects the public treasury from unanticipated money judgments." Todino v. Wellfleet, 448 Mass. 234, 238 (2007). "The general rule of law with respect to sovereign immunity is that the Commonwealth or any of its instrumentalities 'cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed [by] statute.'" DeRoche v. Massachusetts Comm'n Against Discrimination, 447 Mass. 1, 12 (2006), quoting General Elec. Co. v. Commonwealth, 329 Mass. 661, 664 (1953). "[T]he rules of construction governing statutory waivers of sovereign immunity are stringent" (quotations and citation omitted). DeRoche, supra. "But even a strict interpretation must be reasonable, . . . and our focus remains on the intent of the Legislature." Todino, supra. Sovereign immunity remains "in effect unless consent to suit has been 'expressed by the terms of a statute, or appears by necessary implication from them.'" Bain v. Springfield, 424 Mass. 758, 763 (1997), quoting C & M Constr. Co. v. Commonwealth, 396 Mass. 390, 392 (1985).

 Here, the act does not explicitly provide for prejudgment interest for liability to private parties, nor does it waive sovereign immunity for prejudgment interest. However, relying on Bain and Trustees of Health & Hosps. of Boston, Inc. v. Massachusetts Comm'n Against Discrimination, 65 Mass. App. Ct. 329, 338 (2005), S.C., 449 Mass. 675 (2007), the judge determined that sovereign immunity was waived by necessary implication. Because

 Page 771 

 the issue presents a question of law, our review is de novo. See Brown v. Office of the Comm'r of Probation, 475 Mass. 675, 677 (2016).

 We have said that "if a remedy is authorized by statute, and if it would apply to the Commonwealth [or its subdivisions] by virtue of the appropriate statutory definition, sovereign immunity is waived." Trustees of Health & Hosps. of Boston, Inc., 65 Mass. App. Ct. at 338. We disagree with the city's argument that "[c]hapter 21E is silent on the availability of prejudgment interest for any judgment." The statute expressly authorizes prejudgment interest where a "person" is liable under the act to the Commonwealth. See G. L. c. 21E, §§ 2, 13. In such circumstances, the Commonwealth shall have a lien "upon the property of such person or persons" to secure payments due under the act, G. L. c. 21E, § 2 (defining "statement of claim" or "statement"), and any such lien shall include "interest thereon at the rate of twelve percent per annum from the date such debt becomes due," G. L. c. 21E, § 13.

 Further, the act applies to the city by statutory definition. Section two of the act provides that "any agency or political subdivision of the federal government or the commonwealth" is a "person" under the act and subject to its provisions. See G. L. c. 21E, § 2. In these circumstances, where the statute expressly authorizes prejudgment interest as a remedy, and where the Commonwealth and its subdivisions are listed in the statutory definitions of persons subject to the statute, "the natural and ordinary reading of the statute result[s] in a necessary implication that the [city] had consented to [prejudgment interest] pursuant to the statute." Trustees of Health & Hosps. of Boston, Inc., 65 Mass. App. Ct. at 338.

 The Supreme Judicial Court has affirmed an award of prejudgment interest on damages under § 4, implicitly holding that such an award furthered the act's remedial and compensatory purposes and was consistent with the intent of G. L. c. 231, §§ 6B and 6C. See Bank v. Thermo Elemental, Inc., 451 Mass. 638, 663 (2008). The city does not contend otherwise. Nor does the city raise sovereign immunity in connection with the plaintiffs' request for prejudgment interest on the § 4A claim for contribution from the city for its share of future response costs. See Grand Manor I, 478 Mass. at 691. The city principally argues that a waiver of sovereign immunity for prejudgment interest on private claims for property damage under § 5 should not be implied because § 5 damages are prospective and therefore speculative. We are not 

 Page 772 

persuaded. [Note 6]

 As the Supreme Judicial Court explained in Grand Manor I, 478 Mass. at 691, § 5 is meant to "fully compensate plaintiffs for the harm they have suffered" because of environmental contamination (emphasis added). Compare Deroche, 447 Mass. at 15 ("no justification for adding interest to [front pay] which, by definition, [is] for losses to be incurred in the future" [citation omitted]). Here, both valuation experts testified that the plaintiffs' units declined in value once the contamination was discovered in 2008, albeit they disagreed on the amount of the devaluation and the effect remediation would have on the future value of the plaintiffs' units. Their differing opinions as to exact damages were estimates, but they were not speculative.

 We are not persuaded by the city's argument that we should parse the provisions of the act to conclude, only as to § 5 claims, and only as to awards to private parties, that immunity for prejudgment interest has not been waived. The act was "drafted in a comprehensive fashion." Taygeta Corp. v. Varian Assocs., 436 Mass. 217, 223 (2002). Its provisions should be read together, Grand Manor I, 482 Mass. at 693, with a view toward the act's "significant purpose . . . to enable private persons 'to obtain a certain measure of compensation for loss resulting from environmental damage'" (citation omitted), Taygeta Corp., supra. Prejudgment interest on such damages, "designed to make a plaintiff whole for the loss of money during the time it was owed but not paid," Fontaine v. Ebtec Corp., 415 Mass. 309, 327 (1993), is "a necessary remedial component of" statutes like the act, Todino, 448 Mass. at 240, quoting Brookfield v. Labor Relations Comm'n, 443 Mass. 315, 325-326 (2005).

 b. Rate of prejudgment interest. "In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law," prejudgment interest shall be added at a rate of twelve percent per annum. G. L. c. 231, § 6H. See G. L. c. 231, § 6B. By contrast, "[i]nterest required to be paid by the commonwealth . . . shall be calculated" at an annual floating rate that may not exceed ten percent. G. L. c. 231, § 6I. The city contends that G. L. c. 231, § 6I, applies to municipalities and therefore the judge erred in imposing prejudgment interest at a 

 Page 773 

rate of twelve percent. We disagree. The city is not the Commonwealth. It is an independent entity distinct from the existence of the Commonwealth. See Opinion of the Justices, 322 Mass. 745, 752 (1948); G. L. c. 40, § 1. "We have often held entities denoted 'bod[ies] politic and corporate' to be neither the Commonwealth nor parts thereof." Daveiga v. Boston Pub. Health Comm'n, 449 Mass. 434, 441 (2007). See Okongwu v. Stephens, 396 Mass. 724, 730 (1986) ("There is a distinction between the Commonwealth and its agencies on the one hand and political subdivisions of the Commonwealth on the other"). Accordingly, we discern no error in the award of prejudgment interest in the amount of twelve percent. [Note 7]

 3. Costs and attorney's fees. The judge awarded fees and costs incurred by the plaintiffs in connection with both trials after finding that their suit "advance[d] the purposes of this chapter." G. L. c. 21E, § 15. He ordered the city to pay attorney's fees of $935,500 and expert fees and costs of $126,000. The judge explained,

"This case was a complicated environmental contamination case in which the defendant contested the important facts and aggressively pursued various tactics of defense over the course of two trials. I presided over the second trial and observed the [c]ity pursue every avenue of advocacy. Plaintiffs' lawyers, of course, had to meet every challenge the [c]ity offered. At trial, plaintiffs' lawyers were very well prepared to present evidence and make legal arguments, and did so skillfully and thoroughly. As would be expected for experienced lawyers who have worked very hard on behalf of their client, the legal fees are considerable.

"The plaintiff[s'] memo (with affidavit and exhibits) adequately supports the request with clarity and detail. The hourly rates are reasonable and the records establish the hours worked and the tasks performed. The plaintiff[s] benefited from counsel's good work at every stage of the litigation, including discovery, motions, and two trials. Each stage was important and complicated. I do not find the fees excessive."

 Page 774 

On appeal, the city claims that the judge's "perfunctory" endorsement demonstrates he did not thoroughly analyze the plaintiffs' motion, resulting in an excessive award. We disagree.

 The amount of a reasonable fee award under § 15 of the act "rests largely in the sound discretion of the trial judge." Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627, 633 (1992). In making a determination of reasonableness, "the judge 'should consider the nature of the case and the issues presented, the time and labor required, the amount of the damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.'" Id. at 634, quoting Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979).

 Here, the judge's endorsement and order plainly demonstrate that he considered these factors. His finding that the case was complicated is supported by a fair reading of Grand Manor I and the affidavit in support of the plaintiffs' motion, documenting the lengthy history of the litigation. After reviewing detailed time records, the judge exercised his discretion to award the plaintiffs most, but not all, of their requested fees. He was "in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." Fontaine, 415 Mass. at 324. We will not substitute our judgment for his. See Hill, petitioner, 422 Mass. 147, 156, cert. denied, 519 U.S. 867 (1996). Based on the act's express authorization for an award of attorney's fees and costs, and all that is before us, we conclude that the judge acted within his discretion in assessing and awarding attorney's fees and costs.

 The plaintiffs have requested an award of costs and attorney's fees incurred in this appeal pursuant to G. L. c. 21E, § 15. The plaintiffs shall have fourteen days from the date of the rescript to submit to this court an application for appellate attorney's fees and costs, together with supporting documentation. See Fabre v. Walton, 441 Mass. 9, 10-11 (2004). The city shall have fourteen days thereafter to respond.

Amended judgment affirmed.

FOOTNOTES
[Note 1] Keith Parker; Paul Donoghue; Anthony Delgreco; Wilmer Gallo Solorzano; Susanna Ritson; Carol Sagro; Judith Copithorne; Frances Inglis; Susan Elimhingbe; Kathleen Harrison; Derek Soderquist; Eiddie Katende; Walter Patterson, Jr.; Michael R. Sherman; Michael Gibbs; Sakhoeurn Van; Ellsworth J. Evans, Jr.; Paul Weissbach; Amir Tabrizi; Keith L. Bennett, Jr.; Prabhaker Jani; Jyoti Jani; William R. Zink; Linda A. Zink; Daniel R. Smith, Sr.; Ashwin Thakkar; Giselia Resendes; Michelle Maher; Maureen Guerin-Porter; Theodore Leoutsakos; Susan Leoutsakos; Lawrence Kelleher; Deborah Carkin; George Barry; Nancy Barry; Brian Andriolo; Helen Bullock; Edward Bullock; Julia Paquin; Tracy Paquette; and Delores Lemieux. 

[Note 2] "An AUL limits the permissible range of future activities and acceptable uses for the site, in order to prevent a member of the public from being exposed to contamination that remains onsite that could not feasibly be remediated." Grand Manor I, 478 Mass. at 685, citing 310 Code Mass. Regs. § 40.1012 (2014). 

[Note 3] The city's remediation effort was not complete at the time of the second trial, nearly ten years after the contamination was discovered, and was "ongoing" at the time of oral argument. 

[Note 4] LaPorte calculated diminution of $79,000 per unit for the twenty-four units currently owned by the plaintiffs, totaling $1,896,000, and diminution of $788,750 for the twelve units previously sold by the plaintiffs (an average of $65,729.17). 

[Note 5] $1,040,665 for the twenty-four current owners (or $43,361.04 per unit) and $378,885 for the twelve former owners (or $31,573.75 per unit). 

[Note 6] The city also argues that a 1992 amendment to the act expressly preserved sovereign immunity by referring to the Massachusetts Tort Claims Act, G. L. c. 258. We disagree for the reasons articulated in Hill v. Metropolitan Dist. Comm'n, 439 Mass. 266, 271-273 (2003). 

[Note 7] Because we conclude that the city is not the Commonwealth, we need not address whether § 6I, which by its terms addresses interest on contract claims against the Commonwealth, has any relevance to G. L. c. 21E claims. See Martignetti v. Haigh-Farr Inc., 425 Mass. 294, 307 (1997) (suggesting that G. L. c. 21E claims sound in tort). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.