HARRISON vs. MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, 101 Mass. App. Ct. 659

 
 CRAIG HARRISON & another [Note 1] vs. MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

101 Mass. App. Ct. 659
 April 6, 2022 - September 13, 2022

Court Below: Superior Court, Suffolk County
Present: Blake, Neyman, & Lemire, JJ.

 

No. 21-P-457.

Massachusetts Bay Transportation Authority. Governmental Immunity. Waiver. Independent Contractor Act. Statute, Construction. Practice, Civil, Motion to dismiss.

In the circumstances of a complaint brought in the Superior Court against the Massachusetts Bay Transportation Authority (MBTA) by plaintiffs alleging a violation of the independent contractor statute, G. L. c. 149, § 148B, as well as unlawful retaliation in violation of G. L. c. 149, § 148A, the judge did not err in granting the MBTA's motion to dismiss on the ground of sovereign immunity, where the language of those statutes gave no express indication that the Legislature intended to include within their scope public employers such as the MBTA; where neither § 38 nor § 2 of the MBTA's enabling statute, G. L. c. 161A, constituted a waiver of the MBTA's sovereign immunity; where the waiver of sovereign immunity contained in other sections of G. L. c. 149 did not reflect a general waiver of sovereign immunity to enforce the chapter as a whole; and where the size of the Commonwealth's workforce, as well as the expansive language and remedial nature of §§ 148A and 148B, did not support the plaintiffs' contention that the Legislature intended, as a matter of public policy, that those statutes apply to public employment. [660-672]

Civil action commenced in the Superior Court Department on September 19, 2018. 

 A motion to dismiss was heard by Kenneth W. Salinger, J. 

 Stephen S. Churchill for the plaintiffs.

 John S. Gearan (Terence P. McCourt also present) for the defendant.

 BLAKE, J. The plaintiffs, Craig Harrison and Barbara Ruchie, were hired by staffing agencies to perform information technology (IT) services for the defendant, Massachusetts Bay Transportation Authority (MBTA). As relevant here, the plaintiffs filed a 

 Page 660 

complaint [Note 2] in the Superior Court against the MBTA for violation of G. L. c. 149, § 148B, the independent contractor statute. Harrison also alleged retaliation under G. L. c. 149, § 148A. [Note 3] The MBTA moved to dismiss these claims contending that as a public employer and political subdivision of the Commonwealth, the claims were barred by sovereign immunity. The motion judge so concluded and dismissed the claims for lack of jurisdiction. The plaintiffs appeal from the judgment dismissing these claims. We affirm.

 Background. We accept as true the facts drawn from the plaintiffs' well-pleaded complaint. See Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 250 (2021). From March 2017 until July 2018, Harrison performed IT services for the MBTA pursuant to a contract between the MBTA and M&R Consultants Corporation (M&R). Under the terms of the contract, the MBTA paid M&R for the IT services performed by Harrison, and M&R in turn paid Harrison. From June 2016 until February 2017, Ruchie performed IT services for the MBTA pursuant to a contract between the MBTA and Computer Merchant, LTD (Computer Merchant). Under the terms of the contract, Ruchie was paid by and received certain benefits as a W-2 employee of Computer Merchant. Both plaintiffs were required to report to MBTA offices on times and days set by the MBTA. The plaintiffs allege that they were misclassified by the MBTA under the independent contractor statute, and Harrison also claims that he was fired in retaliation for asserting that he had been misclassified. 

 Discussion. 1. Standard of review. We review, de novo, the judge's legal conclusions that sovereign immunity bars the plaintiffs' claims and was not waived. See Brown v. Office of the Comm'r of Probation, 475 Mass. 675, 677 (2016). See generally Donahue v. Trial Court, 99 Mass. App. Ct. 180, 182 (2021).

 2. Establishment of the MBTA. In the early 1960s, a "network of private companies [regulated by the Massachusetts Transportation Authority] . . . provided mass transportation services in the greater Boston area." Lavecchia v. Massachusetts Bay Transp. Auth., 441 Mass. 240, 244 (2004). In response to the "imminent 

 Page 661 

failure" of a number of these private street railway companies and the availability of Federal aid, the Legislature created the MBTA as "a body politic and corporate and a political subdivision of the commonwealth" (citation omitted). Id. at 243. Its public purpose was to "operate, in the public interest, commuter railroads, rapid transit, buses, street-cars[,] and any other forms of mass transportation" (citation omitted). Id. at 243-244. 

 At the time the MBTA was created, the Commonwealth had consented to suit in a very limited number of situations. See Lavecchia, 441 Mass. at 244 n.7 ("Massachusetts still [clung] tenaciously to the concept that the sovereign [could] do no wrong and ha[d] relinquished little of its sovereign immunity. . . . However, the state had shown an inclination to provide greater relief to the person injured by the tortious activity of local communities" [citation omitted]). Although contract actions were permitted against the Commonwealth, tort actions were not. Id. The Legislature included a provision in the MBTA's enabling act, however, waiving immunity, inserted by St. 1964, c. 563, § 21, and codified at G. L. c. 161A, § 21, [Note 4] with an eye toward allowing "the public to retain the right to bring tort actions against the MBTA to the extent that such a right previously had been available against private railway and streetcar companies." [Note 5] Lavecchia, supra at 244. See Smith v. Massachusetts Bay Transp. Auth. 462 Mass. 370, 373 (2012) (Legislature "placed the MBTA on the same footing as any private transport operator, requiring it, among other things, to pay interest and costs in accordance with the law generally applicable to claims in tort"). 

 In November 2009, the Legislature added the MBTA to the list of "public employers" covered by the Massachusetts Tort Claims Act, and struck the entire second paragraph of G. L. c. 161A, § 38. See St. 2009, c. 25, §§ 112-113, 123 (2009 amendments). Importantly, the Legislature also struck the language in the first paragraph of § 38 that made the MBTA liable "to the same extent as a private street railway company" for certain acts and 

 Page 662 

negligence, thereby leaving no doubt as to the MBTA's status as a State entity and "public employer" under § 38. Cf. Smith, 462 Mass. at 371 (2009 amendments made MBTA "public employer" under the Tort Claims Act). 

 3. Rules of construction. "The general rule of law with respect to sovereign immunity is that the Commonwealth or any of its instrumentalities cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed [by] statute" (quotation and citation omitted). DeRoche v. Massachusetts Comm'n Against Discrimination, 447 Mass. 1, 12 (2006). "[W]aiver[s] of sovereign immunity must be 'expressed by the terms of the statute, or appear by necessary implication from them'" (citation omitted). Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 731 (2022) (Exxon Mobil). Accord Boston Med. Ctr. Corp. v. Secretary of the Exec. Office of Health & Human Servs., 463 Mass. 447, 454 (2012). 

 Although we apply a "natural and ordinary reading of the statute [allegedly waiving immunity]," Trustees of Health & Hosps. of Boston, Inc. v. Massachusetts Comm'n Against Discrimination, 65 Mass. App. Ct. 329, 338 (2005), S.C., 449 Mass. 675 (2007), "[t]he rules of construction governing statutory waivers of sovereign immunity are stringent" (citation omitted). Grand Manor Condominium Ass'n v. Lowell, 100 Mass. App. Ct. 765, 770 (2022). However, "even a strict interpretation must be reasonable" (citation omitted). Id. A sovereign immunity analysis ultimately turns on legislative intent. Id.

 4. Legislative intent. [Note 6] The statutory language is "the primary source of insight into" legislative intent (citation omitted). Casseus v. Eastern Bus Co., 478 Mass. 786, 795 (2018). The first paragraph of the antiretaliation provision of the wage and hours laws, G. L. c. 149, § 148A, states: "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." [Note 7] Although the statute uses the terms "employee" and "employer," it is silent as to whether 

 Page 663 

public employment is covered by its provisions. Relying on the Legislature's use of the words "employee" and "employer" in the first and second paragraphs of G. L. c. 149, § 148A, the plaintiffs argue that § 148A "is expressed in the most expansive terms possible, with no limitations or language narrowing its scope." We disagree, as we believe that the terms "employee" and "employer," undefined in this section of the statute, create an ambiguity as to whether these words apply to public employers such as the MBTA. Contrast, e.g., G. L. c. 149, § 6 1/2 (a) (broadly defining "public employers" as "any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth or of any political subdivision of the commonwealth, any quasi-public independent entity and any authority or body politic and corporate established by the general court to serve a public purpose"); G. L. c. 149, § 52C (defining "employer" subject to personnel records law as "an individual, corporation, partnership, labor organization, unincorporated association or any other legal business, public or private, or commercial entity including agents of the employer"). The notable absence of any indication in the retaliation provisions that the Legislature intended to include within their scope public employers, such as the MBTA, militates against application of these provisions to the MBTA. [Note 8]

 Likewise, the independent contractor statute, G. L. c. 149, § 148B, added by St. 1990, c. 464, is silent as to whether public employment is encompassed within its provisions, and therefore creates an ambiguity. [Note 9] To resolve this ambiguity, we are guided 

 Page 664 

by the Legislature's use of the word "whoever" in the remedial provision of the statute. [Note 10] The Legislature has defined, for purposes of construing all Massachusetts statutes, the word "whoever" to "include corporations, societies, associations, and partnerships." G. L. c. 4, § 7, Twenty-third. And "as [a] general rule," absent clear indication in the statute to the contrary -- not present here -- the "word 'whoever' when used in [the] General Laws does not encompass government agencies or municipalities" (emphasis added, citation omitted). Boxford v. Massachusetts Highway Dep't, 458 Mass. 596, 605 (2010). See Hansen v. Commonwealth, 344 Mass. 214, 219 (1962) ("it is a widely accepted rule of statutory construction that general words in a statute . . . will not ordinarily be construed to include the State or political subdivisions thereof"). Accord Exxon Mobil, 489 Mass. at 731 (Attorney General is not "party" within meaning of G. L. c. 231, § 59H). 

 The Legislature has subjected public entities to the terms of a statute by the use of express "language to that effect." Commonwealth v. Voight, 28 Mass. App. Ct. 769, 772 (1990). See, e.g., Brown, 475 Mass. at 677 (General Laws c. 151B "waives sovereign immunity in several respects by including the Commonwealth 'and all political subdivisions . . . thereof' in its definition of the persons and employers subject to it" [citation omitted]). As the plaintiffs acknowledge, many sections of c. 149 expressly cover public employers and public employees. [Note 11] In the statutes at issue here, the Legislature did not include a definition section or 

 Page 665 

other statutory language that would demonstrate that waiver of sovereign immunity was intended, despite the fact that it clearly knew how to do so. [Note 12] We address the plaintiffs' arguments that the Legislature nonetheless intended that the independent contractor statute and the antiretaliation provision to apply to public employment.

 a. Language of G. L. c. 161A. The plaintiffs contend that certain sections of the MBTA's enabling statute, G. L. c. 161A, waive sovereign immunity. They first argue that although the waiver of immunity for tort liability in G. L. c. 161A, § 38, may have changed since the statute's enactment in 1964, its waiver of immunity for liability for the MBTA's "acts" has not. [Note 13] They interpret the language of the first paragraph of § 38, in light of the Legislature's failure to delete it in its entirety in 2009, to show a clear intention for the MBTA to be "broadly liable for its acts." But the nature of the 2009 amendments and the historical context 

 Page 666 

foreclose this argument.

 The 2009 amendments ensured that the MBTA would be treated as a public entity for liability purposes. Those amendments show together an intention to modify the complete waiver of immunity granted in 1964 for, among other things, the "acts and negligence" of the MBTA's directors, servants, and employees in its management and operation. See Smith, supra at 374 (impact of 2009 amendments was to narrow "the scope of the Commonwealth's consent to suit"). [Note 14] To the extent that the statute submits the MBTA to the jurisdiction of the courts, it does so as a State entity -- not as a private company. Accordingly, statutory claims against the MBTA must include within the statute a waiver of sovereign immunity, which is absent here. Thus, the plaintiffs' reliance on § 38 fails. 

 b. "Sue-and-be-sued" clause of G. L. c. 161A, § 2. The plaintiffs next argue that G. L. c. 161A, § 2, which provides that the MBTA "shall have the power . . . to sue and be sued in law and equity" waives sovereign immunity. [Note 15] Like any government entity, the MBTA possesses only those powers that the Legislature conferred upon it. The "sue-and-be-sued" language appears in the statutory section creating the MBTA and bestowing general powers upon it. [Note 16] The placement of the language in G. L. c. 161A, § 2, demonstrates the Legislature's intention to permit the MBTA to sue or be sued in its own name; it does nothing more, and nothing less. See, e.g., Eastern Mass. St. Ry. v. Massachusetts Bay Transp. Auth., 350 Mass. 340, 342-343 (1966) (MBTA properly exercised its powers granted by G. L. c. 161A by entering into contract with independent contractor to provide certain rail transportation). The MBTA is a hybrid government entity, "a body politic and corporate and a political subdivision of the commonwealth." G. L. c. 161A, § 2. On the one hand, it has a "separate 

 Page 667 

corporate existence," but on the other hand, it "perform[s] special public functions," Kargman v. Boston Water & Sewer Comm'n, 18 Mass. App. Ct. 51, 57 n.7, 59 (1984), and is not "amenable to suit without the Commonwealth's express consent," Smith, 462 Mass. at 373. Absent the power to sue or be sued, the MBTA could not be a party to litigation in its own name, and it would be unable to maintain its separate corporate existence or fulfill its public purpose and responsibilities. See Kargman, supra. In upholding the constitutionality of G. L. c. 161A's standards, the Supreme Judicial Court stated that "[the MBTA] is that kind of agency of the sovereign for which broad general powers and standards are appropriate." Massachusetts Bay Transp. Auth. v. Boston Safe Deposit & Trust Co., 348 Mass. 538, 542-543 (1965). "Waiver of sovereign immunity will not be lightly inferred." Lopez v. Commonwealth, 463 Mass. 696, 701 (2012). We are satisfied that if the Legislature had intended a broad waiver of immunity in the "sue-and-be-sued" clause in G. L. c. 161A, § 2, it would have included such a provision. See Bain v. Springfield, 424 Mass. 758, 764 (1997) ("we do insist on a specific statement or clear implication before we take the Legislature to have waived the immunity of the Commonwealth"). [Note 17]

 In addition, the plaintiffs' reliance on Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish 

 Page 668 

Hatchery Corp., 443 Mass. 1 (2004), is misplaced as that case involved a waiver of tribal sovereign immunity, which is "governed by its own distinctive law . . . to be distinguished from State sovereign immunity," and an express agreement by the tribe to be treated in the same manner as a Massachusetts corporation. Id. at 11-15. Moreover, many statutes contain "sue-and-be-sued" clauses or substantially similar language to that upon which the plaintiffs rely. See, e.g., G. L. c. 6C, § 3 (12) ("department [of transportation] shall have . . . the power to . . . sue and be sued in its own name, plead and be impleaded"); G. L. c. 40, § 2 (towns may sue and be sued in their own names); G. L. c. 71, § 16 (b) (regional school districts may sue and be sued to same extent and upon same conditions as towns). The plaintiffs' position would effectively result in an expansive waiver of sovereign immunity for any State or municipal entity with sue-and-be-sued (or similar) language in its enabling legislation. Such a broad conclusion would be inconsistent with our sovereign immunity jurisprudence, and therefore we must reject it. 

 c. Language of G. L. c. 149, §§ 148A and 148B. The plaintiffs also argue that G. L. c. 149, §§ 148A and 148B, waive sovereign immunity because they "apply to all of chapter 149, multiple provisions of which [include] the Commonwealth as a[] [covered] employer." The plaintiffs claim that c. 149 reflects a legislative intention that the terms "employee," "employer," and "employment" as used in c. 149's many sections "encompass both private sector and public sector" employment. In other words, they perceive a general waiver of sovereign immunity necessary to effect enforcement of c. 149 as a whole. But c. 149 "constitutes a loose collection of sections regulating a wide range of business and labor activities within the Commonwealth." Kessler v. Cambridge Health Alliance, 62 Mass. App. Ct. 589, 595 n.3 (2004). The various statutory sections of this "loose collection" embody diverse public policies, address distinct societal issues, have unique purposes, and provide different remedies. Some apply to public employment. See note 11, supra. Others do not. See, e.g., G. L. c. 149, §§ 24A, 178A. No over-all intent to extend the terms "employee" and "employer" to all employment may be gleaned from its sections. 

 In fact, G. L. c. 149, § 150, provides an aggrieved "employee" with a private right of action to seek redress for violations of certain enumerated provisions of c. 149. One of those enumerated provisions, G. L. c. 149, § 33E, covers only public employees. A 

 Page 669 

second, the Wage Act, covers only certain public employees. Together, they defeat the plaintiffs' argument that the Legislature intended chapter-wide coverage of public employment. [Note 18] 

 The plaintiffs also rely on Jancey v. School Comm. of Everett, 421 Mass. 482 (1995), S.C., 427 Mass. 603 (1998), to support a finding of waiver in c. 149 as a whole (and on public policy grounds, see infra). The Jancey court concluded that "[m]unicipal employees can clearly sue their employer under the provisions of MEPA [the Massachusetts Equal Pay Act, G. L. c. 149, § 105A]," which, similar to §§ 148A and 148B, does not expressly encompass public employment. Id. at 499. The court reasoned that the Legislature added "quite broad" definitions of "employee," "employer," and "employment" to c. 149 at the time MEPA was enacted that "appear[ed] on their face to encompass employers and employees in both the public and private sectors." Id. at 500. See G. L. c. 149, § 1. The court declined to "read into [these broad statutory definitions] an implied exclusion of public employment," adding that "[i]f the Legislature had intended to exclude public employment from coverage, it could have done so by express language." Jancey, supra. But Jancey is readily distinguishable from this case as the Legislature did not add any special definitions, "quite broad" or otherwise, to apply to §§ 148A or 148B at the time they were enacted. Indeed, the definitions relied on in Jancey apply by their terms only to G. L. c. 149, §§ 105A to 105C. See G. L. c. 149, § 1.

 It is true that the Legislature could have added express language confirming its intention to exclude public employment from the ambit of these statutes. It is also true that the Legislature could have added language to G. L. c. 149, §§ 148A and 148B, clarifying that public employees and public employers were covered. But, given the stringent rules of construction governing statutory waivers of sovereign immunity, we think the latter rule of construction controls. Cf. Ware v. Commonwealth, 409 Mass. 89, 90-91 (1991) (court refused to apply canon that "statutory expression of one thing is an implied exclusion of other things omitted from the statute" to imply right to recover costs against 

 Page 670 

the Commonwealth); Broadhurst v. Director of the Div. of Employment Sec., 373 Mass. 720, 727 (1977) ("legislative silence as to interest in [G. L.] c. 151A . . . indicates a legislative intent that interest not be payable on unemployment benefits"). Moreover, the broad construction favored by the plaintiffs would require us to add words to the statute that the Legislature did not include in the first instance. See Donis v. American Waste Servs., LLC, 485 Mass. 257, 266 (2020) ("If the Legislature intentionally omits language from a statute, no court can supply it" [citation omitted]); Tze-Kit Mui v. Massachusetts Port Auth., 478 Mass. 710, 712-713 (2018) (declining to add language not expressly mentioned in Wage Act); Cranberry Realty & Mtge. Co. v. Ackerley Communications, Inc., 17 Mass. App. Ct. 255, 257 (1983) ("If omission was due to inadvertence, an attempt to supply it . . . would be tantamount to adding to a statute a meaning not intended by the Legislature" [citation omitted]).

 d. Public policy. Finally, the plaintiffs argue that there are public policy reasons to find waiver of sovereign immunity. Assuming for the sake of argument that sovereign immunity may be waived on this basis, the plaintiffs argue that the combination of the size of the Commonwealth's workforce, the "expansive" language of G. L. c. 149, §§ 148A and 148B, [Note 19] and their remedial nature support the conclusion that the Legislature intended that these statutes apply to public employment. They further argue that the Legislature could not have reasonably intended as a matter of public policy to give the Commonwealth, the largest employer in Massachusetts, a "license to retaliate against its workers and to misclassify employees" at will, and to leave public employees without a remedy. 

 To be sure, the remedial nature of the statute is a factor in any analysis of legislative intent. However, the general rule requiring employment statutes to be liberally construed, see Depianti v. 

 Page 671 

Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 620 (2013), must yield to the more specific rule requiring strict construction of purported waivers of sovereign immunity, see, e.g., Brown, 475 Mass. at 681 ("Notwithstanding [G. L. c. 151B, § 9,]'s instruction that it should 'be construed liberally,' . . . statutory waivers of sovereign immunity must be understood stringently"); Donahue, 99 Mass. App. Ct. at 184-185 (applying narrow construction of Wage Act, a remedial statute, to conclude that sovereign immunity barred claim). 

 To the extent that the plaintiffs rely on the "broad" definitions of "employer" and "employ" in certain regulations promulgated by the Department of Labor Standards to support their policy argument, those regulations pertain to the administration and enforcement of the Minimum Fair Wages Act, G. L. c. 151. See 454 Code Mass. Regs. § 27.01 (2016). See also 454 Code Mass. Regs. § 27.01(2) (2016) (describing scope of 454 Code Mass. Regs. § 27.00 as "appl[ying] to any employer who employs any person in an occupation in accordance with [G. L.] c. 151"). They have no application to retaliation and misclassification claims brought under G. L. c. 149, §§ 148A and 148B. [Note 20] See G. L. c. 149, §§ 30A-30C (governing hours of work and overtime for State employees). [Note 21] See also Donahue, 99 Mass. App. Ct. at 187 (where overtime statute, G. L. c. 151, § 1A, does not apply to those employed by Commonwealth, plaintiff's claim barred by sovereign immunity); Grenier v. Hubbardston, 7 Mass. App. Ct. 911, 911 (1979) (applying general rule that "statutes regulating persons and corporations engaged in trade and industry are ordinarily construed not to apply to the Commonwealth or its political subdivisions unless the Legislature has expressly or by clear implication so provided" to hold that G. L. c. 151 does not cover municipal employees). In any event, even if these regulations did apply, they do not provide a basis for waiving sovereign immunity in G. L. c. 149, §§ 148A and 148B.

 Page 672 

 Neither the alleged breadth of the statutory language nor the size of the Commonwealth's workforce is a fair substitute for legislative language demonstrating, expressly or impliedly, that waiver of sovereign immunity was intended. Applying sovereign immunity in this case is consistent with the legislative goal of protecting the public treasury against depletion from unanticipated money judgments. See Smith, 462 Mass. at 373. Compare id. ("[MBTA] is funded in part from the Commonwealth's treasury, . . . [and] [u]nder the doctrine of sovereign immunity, . . . the MBTA is not amenable to suit without the Commonwealth's express consent"), with Karlin v. Massachusetts Turnpike Auth., 399 Mass. 765, 766-767 (1987) ("As an independent entity, supported by its own nontax revenue sources and without the Commonwealth's credit pledged on its behalf, the [Turnpike] Authority's circumstances do not present the need for the protection of public funds which underlay the reason for governmental immunity"). 

 To the extent that the plaintiffs argue that "[d]enying State employees the protections that the Legislature deemed so critical to the Wage Act would not effectuate the Act's legislative intent," the Legislature itself denied those rights to all but limited classes of public employees. Any unjustness in the inadequacy of the remedies and the scope of coverage of G. L. c. 149, §§ 148, 148A, and 148B are matters best addressed by the Legislature.

 Judgment affirmed.

FOOTNOTES
[Note 1] Barbara Ruchie. 

[Note 2] The operative complaint is the second amended class complaint; however, the plaintiffs never sought class certification. 

[Note 3] Additional claims against the MBTA and other defendants and third-party defendants were dismissed, some voluntarily, and there is no appeal before us as to them. 

[Note 4] The Legislature repealed and recodified G. L. c. 161A in 1999. The limited waiver of liability provision of c. 161A remained unchanged and became § 38. See St. 1999, c. 127, § 151. 

[Note 5] In 1978, the Legislature excluded the MBTA from the definition of a "public employer" entitled to the limitations on liability and protections of the Massachusetts Tort Claim Act. See G. L. c. 258, § 1, inserted by St. 1978, c. 512, § 15. In 2009, the Legislature amended the definition of "public employer" to include the MBTA. See St. 2009, c. 25, § 123. 

[Note 6] The parties disagree as to whether the plaintiffs preserved for appellate review their argument that certain provisions of the MBTA's enabling act waived sovereign immunity. We presume, without deciding, that the issue is preserved for purposes of this opinion. 

[Note 7] The first paragraph of § 148A provides a remedy for employees subjected to adverse actions for taking "any action" to assert their rights under the wage and hour laws. Smith v. Winter Place LLC, 447 Mass. 363, 367 (2006). General Laws c. 149, § 148A, second par., states that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person . . . shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in [G. L. c. 149, §] 27C." 

[Note 8] In enacting G. L. c. 149, § 148A, the Legislature created "a cause of action not recognized at common law prior to the statute's enactment." Lipsitt v. Plaud, 466 Mass. 240, 247 n.11 (2013). Given the number of public employees impacted and the potential danger to the public fisc, we believe that the Legislature would have used more precise language if it had intended to waive immunity. And we presume that the Legislature was aware of the limited waiver of sovereign immunity in the related Wage Act, G. L. c. 149, § 148, at the time it enacted § 148A. See Jancey v. School Comm. of Everett, 421 Mass. 482, 496 (1995), S.C., 427 Mass. 603 (1998); Donahue, 99 Mass. App. Ct. at 183-184. 

[Note 9] The independent contractor statute establishes a presumption of employment that a putative employer may rebut by satisfying a three-prong statutory test. See G. L. c. 149, § 148B (a) (1)-(3). The statute "defines the over-all employer-employee relationship for all cases arising under G. L. c. 149 and G. L. c. 151." Gallagher v. Cerebral Palsy of Mass., Inc., 92 Mass. App. Ct. 207, 210 (2017). Individuals performing services as employees as opposed to independent contractors are entitled to a host of protections and benefits under our wage statutes. See Patel v. 7-Eleven, Inc., 489 Mass. 356, 358-359 (2022). 

[Note 10] The remedial provision of the statute, G. L. c. 149, § 148B (d), states: "[w]hoever fails to properly classify an individual as an employee according to this section . . . shall be punished and shall be subject to all of the criminal and civil remedies . . . provided in section 27C of this chapter." 

[Note 11] See, e.g., G. L. c. 149, § 30A (restricting tours of duty and hours of "all persons employed by the commonwealth"); G. L. c. 149, § 30B (establishing overtime rate, with certain exceptions, for "[a]ll service . . . rendered by any employee of the commonwealth"); Massachusetts Parental Leave Act, G. L. c. 149, § 105D (defining "employer" by reference to G. L. c. 151B, § 1 [5]); Massachusetts Earned Sick Time Law, G. L. c. 149, § 148C (a) (broadly defining "employer" to include, with certain exceptions, "any individual, corporation, partnership or other private or public entity, including any agent thereof, who engages the services of an employee for wages, remuneration or other compensation"); G. L. c. 149, § 185 (a) (2) (defining "employer" subject to Whistleblower Act as "the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof"). 

[Note 12] We also note that when the Legislature subsequently enacted additional statutes to this section of G. L. c. 149, it expressly extended coverage to both private and public employment. See G. L. c. 149, §§ 148C and 148D, inserted by St. 2014, c. 505, § 1. 

[Note 13] As codified in 1999, G. L. c. 161A, § 38, contained three paragraphs: 

"The authority shall be liable for the acts and negligence of the directors on the board and of the servants and employees of the authority in the management and operation of the authority and of the properties owned, leased and operated by it to the same extent as though the authority were a street railway company, but the directors shall not be personally liable except for malfeasance in office. 

"The authority shall be liable in tort to passengers, and to persons in the exercise of due care who are not passengers or in the employment of the authority, for personal injury and for death and for damages to property in the same manner as though it were a street railway company; provided that any action for such personal injury or property damage shall be commenced only within two years next after the date of injury or damage and in case of death only within two years next after the date of the injury which caused the death. 

"The board shall have charge of and supervise the investigation, settlement and defense of all such claims and of all other suits or actions relating to the property or arising out of the construction, maintenance or operation of the authority" (emphasis added).

St. 1999, c. 127, § 151. 

[Note 14] We note that the MBTA was experiencing a significant budget deficit in the fiscal years leading up to the 2009 amendments. See Massachusetts Bay Transp. Auth. v. Somerville, 451 Mass. 80, 87 (2008). 

[Note 15] This section creates the MBTA and authorizes it "to hold property, to sue and be sued in law and equity and to prosecute and defend all actions relating to its property and affairs." G. L. c. 161A, § 2. The statute further provides that the "[MBTA] shall be liable for its debts and obligations, but the property of the authority shall not be subject to attachment nor levied upon by execution or otherwise. Process may be served upon the treasurer of the [MBTA] or, in the absence of the treasurer, upon any member of the board." Id. 

[Note 16] The Legislature conferred more specific, additional powers on the MBTA in G. L. c. 161A, § 3. 

[Note 17] The plaintiffs note that the United States Supreme Court and Federal courts have interpreted similar sue-and-be-sued clauses in Federal enabling statutes liberally to effect broad waivers of sovereign immunity. See, e.g., Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 480-481 (1994) ("agencies authorized to 'sue and be sued' are presumed to have fully waived immunity" [quotations and citation omitted]). However, Massachusetts courts interpreting our State statutes stringently construe statutory waivers of sovereign immunity. See Grand Manor Condominium Ass'n, 100 Mass. App. Ct. at 770. The Federal cases that equate sue-and-be-sued clauses with a waiver of sovereign immunity are based on Federal law and thus not binding on us. And while other jurisdictions are split on this question, we think the cases that conclude that these clauses, standing alone, do not waive sovereign immunity are the better reasoned ones. See, e.g., Self v. Atlanta, 259 Ga. 78, 79 (1989) ("such [sue and be sued] language should be read as providing an entity with the status and capacity to enter courts, and not as waiving sovereign immunity"); Young v. Greater Portland Transit Dist., 535 A.2d 417, 419 (Me. 1987) (holding that Maine "narrowly construe[s] express waivers" of sovereign immunity, and concluding the "right to 'sue [or] be sued'" as used in public transit system's statutory charter was not waiver of sovereign immunity); New Jersey Educ. Facilities Auth. v. Gruzen Partnership, 125 N.J. 66, 72 (1991) ("the presence of the 'sue and be sued' language . . . is but one of the factors to be considered in determining legislative intent"). 

[Note 18] While it is true that the Wage Act applies to the Commonwealth and its instrumentalities, the waiver of immunity is limited to specified classes of employees. See Donahue, 99 Mass. App. Ct. at 184-187 (where court officers not an enumerated class of employees, court officer's Wage Act claim properly dismissed as barred by sovereign immunity). The plaintiffs do not purport to fall within one of the classes of employees covered by the Wage Act. 

[Note 19] By its plain language, § 148A applies only to the wages and hours provisions of c. 149. We agree with the plaintiffs that the Legislature broadly defined the class of individuals considered employees for purposes of the independent contractor statute. It did so to create a statutory presumption of an employment relationship to protect workers from being misclassified as independent contractors who would not otherwise be protected by our wage and hours laws, cc. 149 and 151. See Patel, 489 Mass. at 358-359. If the Legislature had also intended to waive sovereign immunity in this section, presumably it would have included a broad definition of "employer" or used a term other than "whoever" in the remedial provision. See note 10, supra. See also Boxford, 458 Mass. at 605. 

[Note 20] The Department of Labor Standards is an agency within the Executive Office of Labor and Workforce Development. Rego v. Allied Waste Servs. of Mass., LLC, 100 Mass. App. Ct. 750, 751 n.4 (2022). The Department of Labor and Industries is part of that office. Id. Although enforcement of chapter 149 was once the province of the Department of Labor and Industries, the Attorney General is now charged with enforcing its provisions. See Reuter v. Methuen, 489 Mass. 465, 469 & n.5 (2022). 

[Note 21] In these statutory sections, the Legislature authorized the promulgation of rules and regulations by the personnel administrator to carry out their provisions. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.